UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LIPING DAI, RUGUO DONG, and
GUOYI WANG *on behalf of themselves and
other persons similarly situated*,

                           Plaintiffs,

         -against-

LYCHEE HOUSE, INC., *d/b/a "Lychee House,"*
GUO PING CHEN, HONG SHENG CHENG
a/k/a Hong Sheng Chen, XIAN YONG ZENG,
LEO "DOE," and "JOHN DOES" 1-5,

                           Defendants.

17cv6197 (DF)

**MEMORANDUM
AND ORDER**

**DEBRA FREEMAN, United States Magistrate Judge:**

<u>BACKGROUND</u>

In this action brought under the Fair Labor Standards Act ("FLSA") and the New York

Labor Law ("NYLL"), plaintiffs Liping Dai ("Dai"), Ruguo Dong ("Dong"), and Guoyi Wang

("Wang") (collectively, "Plaintiffs") claim, *inter alia*, that they were denied minimum wages and

overtime pay, while employed by defendants Lychee House, Inc., d/b/a "Lychee House,"

Guo Ping Chen, Hong Sheng Cheng, a/k/a Hong Sheng Chen, Xian Yong Zeng, Leo "Doe," and

"John Does" 1-5 (collectively, "Defendants").  Currently before this Court is a motion made

pursuant to Section 216(b) of the FLSA, by which Plaintiffs seek conditional certification of a

collective of similarly situated employees and ask this Court to facilitate Court-authorized notice,

so that the similarly situated employees may opt into Plaintiffs' collective action.  For the

reasons that follow, Plaintiffs' motion (Dkt. 35) is granted in part and denied in part.

## BACKGROUND

### A.      Factual Background

According to the Complaint, Defendants own and operate Lychee House (which this Court understands to be a Chinese restaurant), at a location on East 55th Street, in Manhattan. (*See* Complaint, dated Aug. 23, 2017, ("Compl.") (Dkt. 9) ¶ 12.)  Plaintiffs also plead that Lychee House is engaged in interstate commerce, has gross annual sales in excess of $500,000, and has "purchased and handled goods moved in interstate commerce" (*id.* ¶¶ 13-14), bringing it within the coverage of the FLSA, *see* 29 U.S.C. §§ 206(a), 207(a)(1).  Plaintiffs allege that each of the Defendants qualifies as an "employer" under the FLSA, as each "(1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employee records at the Lychee House restaurant."  (*Id.* ¶¶ 17, 20, 24, 27, 29.)  The nature of Plaintiffs' work for Defendants, as well as their hours and pay, are summarized below.

### 1.      Plaintiff Dai

Plaintiff Dai claims that he is currently employed by Defendants at the Lychee House restaurant, and that he has worked there, as a "meat preparer," since approximately January 4, 2007.  (Declaration of John Troy in Support of Motion for Conditional Collective Certification, dated Jan. 12, 2018 ("Troy Decl.") (Dkt. 37), Ex. 5 (Affidavit of Liping Dai in Support of Plaintiffs' Motion for Conditional Collective Certification, sworn to Jan. 12, 2018 (Dkt. 37-5) ("Dai. Aff.") ¶ 3.)  He contends that, during the first three years of his employment at the restaurant, he worked 11 hours per day, six days per week, for a total of 66 hours per week, with

no rest breaks.[1]  (Dai Aff. ¶ 4.)  From about January 2009 through December 2016, he asserts that he worked 11 hours per day, five days per week, with a half-hour rest break each day, for a total of 52.5 hours per week.  (*Id.* ¶ 5.)  Finally, from about January 2017 to the present, he claims to have worked 10 hours per day, five days per week, with a half-hour rest break each day, for a total of 47.5 hours per week.  (*Id.* ¶ 7.)  Even in the years where he was given rest breaks, though, Dai asserts that, much of the time, he "had to work in the kitchen whenever order[s] came in."  (*Id.* ¶¶ 6, 8.)

Prior to 2016, Dai asserts that he was paid a set amount per month:  $1,400 per month in January 2007; $1,500 per month from February through April 2007; $1,800 per month from May 2007 through December 2009; and $1,700 per month from 2010 through 2015.  (*Id.* ¶¶ 9-12.) Starting in 2016, he asserts that he was paid an hourly rate – first $9.00 per hour, and then, starting in 2017, $11.00 per hour.  (*Id.* ¶¶ 13-14.)

Based on these hours and pay, Dai asserts that he was neither paid the required minimum wage, nor (with the exception of the period from January 2017 to the present) any overtime pay for the hours that he worked above 40 hours per week.  (*Id.* ¶¶ 17, 20.)  Even as to the period since January 2017, Dai contends that he was not fully compensated for his overtime hours.  (*Id.* ¶ 17; *see also* Compl. ¶ 59 (alleging that, "[f]rom on or about January 1, 2017 to the present, Plaintiff Dai received no pay for some of the hours he worked each day").)

---

[1] This Court assumes that, by stating that he had "no break" during his work day during this period, Dai is somehow differentiating between a "rest" break and a "meal" break, as, later in his Affidavit, he asserts that, "throughout [his] employment, [he] was afforded two ten-to-fifteen minutes meal break during each work day."  (Dai Aff. ¶ 19; *see also id.* ¶¶ 5, 7 (separately referencing "rest" breaks).)

### 2.   **Plaintiff Dong**

Plaintiff Dong also claims that he is a current employee of Defendants, and asserts that he has worked at the Lychee House restaurant as a "vegetable cutter" and "dishwasher" since approximately January 2010.  (Troy Decl., Ex. 6 (Affidavit of Ruguo Dong in Support of Plaintiffs' Motion for Conditional Collective Certification, sworn to Jan. 12, 2018 ("Dong Aff.") (Dkt. 37-6) ¶ 3.)  He asserts that, from about January 2010 through 2016 (with a one-month exception), he worked 11 hours per day, five days per week, with a half-hour rest break each day, for a total of 52.5 hours per week.  (Dong. Aff. ¶ 5.)[2]  He asserts that, during 2017, he worked 10 hours per day, five days per week, with a one-and-a-half hour rest break each day, for a total of 42.5 hours per week.  (*Id.* ¶ 7.)  Finally, he asserts that, in 2018, he worked nine hours per day, four days per week – plus another four hours, one day per week – totaling 40 hours per week.  (*Id.* ¶ 8.) [3]

Like Dai, Dong asserts that he was initially paid a set amount per month:  $1,600 per month from 2010 through 2012, and $1,700 per month in 2013.  (*Id.* ¶¶ 9-10.)  Although he states that, beginning in 2014, he was paid hourly, he does not state what hourly wage he received in 2014, 2015, or 2018, stating only that he was paid $9.00 per hour in 2016 and $11.00 per hour in 2017.  (*Id.* ¶¶ 11, 12, 14.)  He generally asserts that, during his employment, he was not paid the required minimum wage or overtime pay (*id.* ¶¶ 13-14, 22-24), and he also asserts

---

[2] Dong contends that, for the single month of September 2016, he worked 11 hours per day, seven days per week, with a half-hour rest break each day, for a total of 73.5 hours per week, during that month.  (Dong Aff. ¶ 6.)

[3] Like Dai, Dong separately states that, throughout his employment, he "was afforded two ten-to-fifteen (10-15) minute meal breaks during each working day."  (*Id.* ¶ 20.)

that, since January 2016, he was paid for only eight hours per day, despite working longer hours (*id.* ¶ 15).

### 3.   Plaintiff Wang

Plaintiff Wang claims that he worked as a "deliveryman" at the Lychee House restaurant for approximately a year, from about October 2012 to October 2013.  (Troy Decl., Ex. 7, Affidavit of Guoyi Wang in Support of Plaintiffs' Motion for Conditional Collective Certification, sworn to Jan. 11, 2018 ("Wang Aff.") (Dkt. 37-7) ¶ 2.)[4]  Wang further asserts that, during the course of that year, he worked 56.5 hours per week – consisting of 11.5 hours per day, five days per week (with two, half-hour meal breaks per day), plus another four hours, one day per week.  (*Id.* ¶ 3.)  Although he separately states that, "[t]hroughout his employment, the restaurant provided a [two-and-a-half-hour] break time," he asserts that he was required to perform "side jobs" (including mixing and packaging sauces, packaging utensils, and wrapping wontons), as well as to take turns with other delivery workers to make deliveries, during that supposed break time.  (*Id.* ¶¶ 5-9.)

Wang asserts that he was paid at a flat rate of $700.00 per month, regardless of the number of hours he worked.  (*Id.* ¶ 10.)  Overall, he contends that he was not paid at the minimum wage, that he did not receive overtime compensation, and that he was not paid for every hour that he worked during his time at the restaurant.  (*Id.* ¶¶ 11-13.)

---

[4] While Wang states in his Affidavit that he worked for Defendants as a "deliveryman" (Wang Aff. ¶ 2), and while Defendants state the same in their opposition memorandum (Memorandum of Law in Opposition of Plaintiff's (sic) Motion for Conditional Collective Certification and Court Authorized Notice, dated Mar. 20, 2018 ("Def. Mem.") (Dkt. 41), at 6 (describing Wang as a "delivery worker")), this Court notes that the Complaint alleges that Wang worked as a "waiter" (Compl.  ¶¶ 11, 84).  Based on Wang's Affidavit, this Court will accept, for purposes of the motion for conditional certification of a collective action, that he worked as a delivery worker.

B. **Procedural History**

Plaintiffs filed their Complaint on August 16, 2017, asserting claims under both the

FLSA and the NYLL (*see* Compl.), and Defendants answered the Complaint on October 23,

2017 (Dkt. 22), denying Plaintiffs' allegations (*see* Answer, dated Oct. 23, 2017 (Dkt. 22)).  The

matter is currently before this Court on consent, pursuant to 28 U.S.C. § 636(c).  (*See* Dkt. 20.)

On February 21, 2018, Plaintiffs filed their motion for conditional certification of an

FLSA collective.  (*See* Notice of Motion for Conditional Collective Certification, dated Jan. 12,

2018 (Dkt. 35).)  By their motion, Plaintiffs seek to proceed in this case on behalf of themselves

and all similarly situated persons employed by Defendants at any time from August 16, 2014

(three years prior to the date the Complaint was filed) to the present.  (*See id.*)

In support of their motion, Plaintiffs submitted the Affidavits cited above (Troy Decl.,

Exs. 5-7), as well as a legal memorandum in support of the motion (Memorandum in Support of

Plaintiffs' Motion for Conditional Certification and Court-Authorized Notice, dated Jan. 14,

2018 ("Pl. Mem.") (Dkt. 36)).  Defendants filed their opposition memorandum on March 20,

2018 (Def. Mem.), and Plaintiffs belatedly filed a reply on July 22, 2018 (Memorandum of Law

in Reply to Defendants' Opposition to Plaintiffs' Motion for Conditional Collective Certification

and Court Authorized Notice, dated July 22, 2018 ("Pl. Reply") (Dkt. 42)).

## DISCUSSION

I. **APPLICABLE LEGAL STANDARDS**

A. **The FLSA and Section 216(b)**

Pursuant to the FLSA, an employee must be paid, at least, the federal statutory minimum

wage for the first 40 hours that he or she worked in a given work week.  29 U.S.C. § 206(a).

Moreover, an employee is entitled to be paid for overtime hours (*i.e.*, any hours exceeding 40

hours per week), at a "rate not less than one and one-half times the regular rate at which [the

employee] is employed." *Id.*, § 207(a)(1); *see also, e.g.*, *Benitez v. Demco of Riverdale, LLC*, No. 14cv7074 (CM), 2015 WL 3780019, at *2 (S.D.N.Y. June 15, 2015) (quoting Section 207(a)(1)). "The statute of limitations under the FLSA is ordinarily two years, but it may be extended to three years if the claim arises from a 'willful' violation." *Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 258 (S.D.N.Y. 2008) (citing 29 U.S.C. § 255(a)). To satisfy the willfulness requirement, a plaintiff must demonstrate that the employer either acted knowingly or "showed reckless disregard for the matter of whether its conduct was prohibited by the statute." (*Id.* (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).)

Section 216(b) of the FLSA allows employees to "recover unpaid minimum wages and/or overtime compensation from an employer who violates the [FLSA's] provisions, and permits such an action to be brought as a collective action." *Summa v. Hofstra Univ.*, 715 F. Supp. 2d 378, 384 (E.D.N.Y. 2010). Pursuant to Section 216(b),

> [a]n action . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b); *see also Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 320 (S.D.N.Y. 2007) (noting that employees can maintain a collective action against an employer where the employees are (1) "similarly situated," and (2) give their consent to become a party in writing).

There are three "essential features" of an FLSA collective action under Section 216(b). *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 367 (S.D.N.Y. 2007).

> First, in order to participate in a collective action, an employee
> must "opt-in," meaning the employee must consent in writing to
> join the suit and that consent must be filed with the court.  Second,
> the statute of limitations runs on each employee's claim until his
> individual Consent Form is filed with the court.  Third, to better
> serve the FLSA's "broad remedial purpose," courts may order
> notice to other potential similarly situated employees to inform
> them of the opportunity to opt-in the case.

*Id.* (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 173 (1989)).

## B.    Standards for Conditional Certification

"Courts generally determine the appropriateness of class certification at two stages:  first,

on the initial motion for conditional class certification, and second, after discovery."  *Fasanelli*,

516 F. Supp. 2d at 321 (collecting cases).  On the initial, pre-discovery motion, a court

determines whether potential opt-in plaintiffs are similarly situated to any named plaintiffs,

based on the pleadings and affidavits submitted to the court.  *Id.*; *see also In re Penthouse*

*Executive Club Comp. Litig.*, No. 10cv01145 (NRB), 2010 WL 4340255, at *3 (S.D.N.Y.

Oct. 27, 2010).  If the court is satisfied that the "similarly situated" standard has been met, it will

authorize that notice be sent to potential opt-in plaintiffs.  *Fasanelli*, 516 F. Supp. 2d at 321.

After discovery is complete, the court will evaluate the full record before it, in order to determine

whether the opt-in plaintiffs are, in fact, similarly situated.  (*Id.*)  "If they are not, the class can be

decertified at that time and the claims of dissimilar 'opt-in' plaintiffs dismissed without

prejudice."  (*Id.*)

In light of the two-step process, "[t]he burden imposed at [the] first conditional

certification stage is minimal."  *Amador v. Morgan Stanley & Co.*, No. 11cv4326 (RJS), 2013

WL 494020, at *4 (S.D.N.Y. Feb. 7, 2013) (internal quotation marks and citation omitted;

second alteration in original).  As discussed further below, the burden at this stage is "low"

because "the purpose of this first stage is merely to determine *whether* 'similarly situated'

plaintiffs do in fact exist." *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) (citations

omitted; emphasis in original).  It is not until the second stage, upon a "full review of the factual

record developed during discovery," that the court determines "whether opt-in plaintiffs are

*actually* 'similarly situated.'"  *Amador*, 2013 WL 494020, at *4 (internal quotation marks and

citation omitted; emphasis in original).  At bottom, while conditional certification is not

automatic, and while a plaintiff's showing in support of certification cannot be entirely

conclusory, *see, e.g.*, *Morales v. Plantworks, Inc.*, No. 05cv2349 (DC), 2006 WL 278154, at

*2-3 (S.D.N.Y. Feb. 2, 2006), courts have recognized that the standard at this first stage is

"'fairly lenient,' [and thus] courts applying it 'typically grant[ ] conditional certification,'"

*Amador*, 2013 WL 494020, at *3 (quoting *Malloy v. Richard Fleischman & Assocs. Inc.*, No.

09cv332 (CM), 2009 WL 1585979, at *2 (S.D.N.Y. June 3, 2009)).

　　　"Neither the FLSA nor its implementing regulations define 'similarly situated.'"  *Summa*,

715 F. Supp. 2d at 385 (citing *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y.

1997)).  Courts in this Circuit have held that named plaintiffs can meet their burden by making a

modest factual showing demonstrating that they and potential opt-in plaintiffs together were

victims of a common policy or plan that violated the law.  *Myers*, 624 F.3d at 554-55; *see also*

*Summa,* 715 F. Supp. 2d at 385.  Indeed, the relevant question "is not whether [the] [p]laintiffs

and [potential opt-in members are] identical in all respects, but rather whether they were

subjected to a common policy."  *Raniere v. Citigroup Inc.*, 827 F. Supp. 2d 294, 323 (S.D.N.Y.

2011), *rev'd on other grounds*, 533 F. App'x 11 (2d Cir. 2013) (internal quotation marks and

citation omitted).  The fact that a potential class may involve employees in "a variety of diverse

positions . . . does not undermine the conditional certification of the class since 'under [S]ection

216(b) parties may be similarly situated, despite not occupying the same positions or performing

the same job functions and in the same locations, provided that they are subject to a common unlawful policy or practice.'" *Summa*, 715 F. Supp. 2d at 390 (quoting *Colozzi v. St. Joseph's Hosp. Health Ctr.*, 595 F. Supp. 2d 200, 207 (N.D.N.Y. 2009)); *see also Lynch*, 491 F. Supp. 2d at 369 (noting that "any factual variances that may exist between the plaintiff and the putative class do not defeat conditional class certification" because the court may later, after having the benefit of full discovery, "decertify the class or divide it into subclasses, if appropriate" (internal quotation marks and citations omitted)).

Further, at this initial procedural stage, the Court does not "resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Shillingford v. Astra Home Care, Inc.*, 293 F. Supp. 3d 401, 407 (S.D.N.Y. 2018) (quoting *Hypolite v. Health Care Servs. of N.Y., Inc.*, 256 F.Supp.3d 485, 489 (S.D.N.Y. 2017)); *see also Lynch*, 491 F. Supp. 2d at 368 ("Indeed, a court should not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated." (citations omitted)); *Bijoux v. Amerigroup N.Y., LLC*, No. 14cv3891 (RJD) (VVP), 2015 WL 4505835, at *3 (E.D.N.Y. July 23, 2015), *report and recommendation adopted*, 2015 WL 5444944 (Sept. 15, 2015) (At this stage "the court's task is only to conclude whether there *may be* other similarly situated workers, and [the court] need not evaluate the underlying merits of a plaintiff's claims" (internal quotation marks and citations omitted; emphasis in original)).  Additionally, as "the initial class certification determination [is] made . . . on preliminary documents such as pleadings and affidavits," the determination is "necessarily [based on] unproven allegations." *Fasanelli*, 516 F. Supp. 2d at 321-22 (rejecting defendant's arguments that declarations provided by plaintiff should not be relied upon because they contained "inadmissible hearsay, speculation, personal beliefs and conclusions," and granting conditional certification).

Even so, to meet his or her burden on a motion for conditional certification, a plaintiff must do more than make unsupported assertions.  Rather, a plaintiff must make a facially adequate showing that putative members of the collective are similarly situated "with respect to the FLSA violations [the named plaintiff] allege[s] – not other factors."  *Bijoux*, 2015 WL 4505835, at *3 (noting that a modest factual showing cannot rest on unsupported assertions, but that a plaintiff can meet his or her burden by supplementing the pleadings with other evidence, such as affidavits from named plaintiffs, opt-in plaintiffs, or other putative collective action members (citations omitted)).

## C.    Court-Authorized Notice

Once a court determines that a named plaintiff has demonstrated that he or she is similarly situated to other employees of the defendant with respect to the defendant's alleged unlawful policy for paying minimum wages and/or overtime pay, and has thus satisfied his or her burden for initial certification of a collective action, the court may proceed to authorize issuance of a notice informing potential additional plaintiffs of their opportunity to opt into the lawsuit.  *Lynch*, 491 F. Supp. 2d at 367.  "Although Section 216(b) does not explicitly address court-authorized notice, 'it is 'well settled' that district courts have the power to authorize an FLSA plaintiff to send such notice to other potential plaintiffs.'"  *Grant v. Warner Music Grp. Corp.*, No. 13cv4449 (PGG), 2014 WL 1918602, at *2 (S.D.N.Y. May 13, 2014) (quoting *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 104 (S.D.N.Y. 2003); additional citations omitted)).

Indeed, as the statute of limitations does not toll for opt-in plaintiffs until they consent to appear, *see Lynch*, 491 F. Supp. 2d at 371, courts will "routinely approve court-authorized notice in order to ensure that the rights of potential claimants do not expire during the discovery

process." *Grant*, 2014 WL 1918602, at *2; *see also Khamsiri v. George & Frank's Japanese*

*Noodle Rest. Inc.*, No. 12cv265 (PAE), 2012 WL 1981507, at *2 (S.D.N.Y. June 1, 2012)

("[C]ourt-authorized notice is appropriate[ ] to prevent erosion of claims due to the running

statute of limitations . . . .").

> [C]ourt-supervised notice is the preferred method for managing the
> notification process for several reasons:  it avoids "multiplicity of
> duplicative suits;" it allows the court to set deadlines to advance
> the disposition of an action; it furthers the "wisdom and necessity
> for early judicial intervention" in multi-party actions; and it
> protects plaintiffs' claims from expiring under the statute of
> limitations.

*Lynch*, 491 F. Supp. 2d at 367 (quoting *Hoffmann-La Roche*, 493 U.S. at 171-72).

"[T]he form and content of the notice" should be "approved by the [c]ourt prior to

mailing," in order to prevent "after-the-fact disputes between counsel" regarding the form and

manner of the notice and the opt-in plaintiffs' consent form.  *Krueger v. New York Tel. Co.*, No.

93cv0178 (LMM), 1993 WL 276058, at *3 (S.D.N.Y. July 21, 1993) (citing *Hoffmann-La*

*Roche*, 493 U.S. at 170).  As "neither the FLSA nor the courts 'have specifically outlined what

form court-authorized notice should take,'" *Amador*, 2013 WL 494020, at *9 (quoting *Fasanelli*,

516 F. Supp. 2d at 323), the content of the notice is left to the court's broad discretion, *see*

*Fasanelli*, 516 F. Supp. 2d at 323 (citing *Hoffmann-La Roche*, 493 U.S. at 170, and noting that

"[t]he Supreme Court has abstained from reviewing the contents of a proposed notice under

§ 216(b), noting that such 'details' should be left to the broad discretion of the trial court").

When exercising discretion, courts should consider the overarching policies of the notice

provisions of Section 216(b), such policies which include achieving judicial efficiency and

lowering individual costs for plaintiffs.  *Fasanelli*, 516 F. Supp. 2d at 323.  "[T]hese benefits

'depend on employees receiving accurate and timely notice concerning the pendency of the

collective action, so that they can make informed decisions about whether to participate.'"  *Id.*

(quoting *Hoffmann-La Roche*, 493 U.S. at 170).

## II.   PLAINTIFFS' MOTION FOR CONDITIONAL<br>CERTIFICATION OF A PROPOSED COLLECTIVE

As set out above, the question for the Court on Plaintiffs' motion for conditional

certification of an FLSA collective focuses "on whether the proposed plaintiffs are 'similarly

situated' . . . with respect to their allegations that the law has been violated."  *Young v. Cooper*

*Cameron Corp.*, 229 F.R.D. 50, 54 (S.D.N.Y. 2005) (citation omitted).  In their Complaint,

Plaintiffs purport to bring this action individually and on behalf of "all other non-exempt chefs,

cooks, fry woks, oil woks, dishwashers, other kitchen workers, sushi chefs, hosts, waiters,

packers, bussers, cashiers, and deliverymen" who were employed at the Lychee House restaurant

during the statute-of-limitations period, and who were not correctly paid under the FLSA.

(Compl. ¶ 92.)  In their motion for conditional certification, however, Plaintiffs assert that – at

least with respect to the asserted claims for denial of overtime pay – a collective here should

cover all non-exempt employees of Defendants, "no matter the job title."  (Pl. Mem., at 13

(arguing that Plaintiffs have met their burden of showing that Plaintiffs and other non-exempt

employees were all "subject to a common policy that denied them overtime pay"); *see also* Pl.

Reply Mem., at 1 (same).)

Defendants, for their part, argue that they have "well established policies regarding

lawful wage and hour practices… [and their] commitment to wage-hour compliance is embodied

in [the restaurant's] operations, tip policy, time recording policy and overtime policy."  (Def.

Mem., at 7.)  Defendants additionally argue that Plaintiffs fall short of making even the modest

factual showing required to establish that Defendants engaged in a policy and practice of failing

to pay either minimum wage or appropriate overtime compensation.  (*Id.*, at 10.)  Defendants

13

further argue that Affidavits submitted by Plaintiffs are "incomprehensibly vague" (*id.*, at 12), and that plaintiff Wang's Affidavit should be disregarded on this motion, because Wang's employment dated to a period outside the time frame of the collective that Plaintiffs' seek to certify (*see id.*).

While Plaintiffs argue persuasively that their Complaint and Affidavits demonstrate their entitlement to proceed as a collective action under the FLSA (*see* Pl. Mem., at 11-13), their submissions offer varying degrees of information about the categories of workers that Plaintiffs seek to include in their proposed collective.  Upon its review of Plaintiffs' submissions, the Court finds it appropriate to grant conditional certification of an FLSA collective action here, but not to permit a collective as broad as Plaintiffs request.  As discussed further below, Plaintiffs have adequately demonstrated, at this preliminary stage, that certain identified categories of workers – including food preparers and cutters, dishwashers, delivery workers, and oil woks – have been similarly situated to them with respect to Defendants' allegedly unlawful pay practices under the FLSA (such that these categories of workers should conditionally be included in a collective), but Plaintiffs have not made such a showing with respect to other categories of workers, and certainly not "all non-exempt employees."

### A.  Food "Preparers" and "Cutters"

Plaintiffs appear to use the job descriptions of food "preparer" and "cutter" interchangeably.  For, example, the Complaint refers to plaintiff Dong as a vegetable preparer (Compl. ¶ 10), while, in his Affidavit, Dong describes himself as a vegetable cutter.  (Dong Aff. ¶ 3).  At this stage, the Court concludes that Plaintiffs have met their burden of making a modest factual showing that, during the proposed period of the collective, food preparers and cutters

(even if slightly different job categories) at the Lychee House restaurant were similarly situated with respect to the FLSA violations alleged by Plaintiffs.

Plaintiffs Dai (himself, a meat preparer) and Dong (himself, a vegetable preparer or cutter) both provide detailed descriptions of the hours they have worked, the manner in which they have been paid, and the amount of their wages.  Based on those descriptions, Dai and Dong contend that, during the proposed collective period, they have neither been compensated at the required minimum wage, nor paid appropriate overtime pay for all of the hours they worked over 40 hours each week.  (Dai Aff. ¶ 20; Dong Aff. ¶¶ 23-24.)  Based on such descriptions, a court "may infer" that other food preparers and cutters "worked similar shifts for comparable pay, thereby suffering the same violations of the FLSA." *Lianhua Weng v. Kung Fu Little Steamed Buns Ramen Inc.*, No. 17cv273 (LAP), 2018 WL 1737726, at *3 (S.D.N.Y. Mar. 26, 2018) (quoting *She Jian Guo v. Tommy's Sushi Inc.*, No. 14cv3946 (PAE), 2014 WL 5314822, at *3 (S.D.N.Y. Oct. 16, 2014)); *see also Cheng Xia Wang, et al. v. Shun Lee Palace Restaurant, Inc. et al.*, No. 17cv00840 (VSB), 2018 WL 3155835, at *4 (S.D.N.Y. June 28, 2018) (finding that certification was proper for all deliverymen based on the experience of the named plaintiffs, who were deliverymen).

Accordingly, based on their accounts of their own similar experiences of having been paid improperly under the FLSA, the Court finds that Dai and Dong have satisfied their minimal burden of showing the appropriateness of a collective that includes other food preparers and cutters.

### B.  "Dishwashers"

As noted above, Dong also claims to have worked at the Lychee House restaurant as a dishwasher.  Based on this, combined with statements made by both Dong and Dai in their

Affidavits regarding conversations they had with another dishwasher, identified in their Affidavits as "Liu," the Court also concludes that Plaintiffs have met their "light burden of making a 'modest factual showing'" that Plaintiffs and other dishwashers "were victims of a common policy or plan that violated the law." *Sanchez v. Gansevoort Mgmt. Grp, Inc.*, No. 12cv75 (KBF), 2013 WL 208909, at *1 (S.D.N.Y. Jan. 10, 2013) (quoting *Hoffman,* 982 F. Supp. at 261).

Dong and Dai both attest to their understanding that Liu has worked at the restaurant since 2011, and both attest to the fact that she complained to them that she has always made $1,500 a month, regardless of how many hours she worked.  (Dai Aff. ¶ 24; Dong Aff. ¶ 28.) This type of attestation by plaintiffs has generally been found sufficient to support conditional certification of a collective action.  *See, e.g.*, *Guo Qing Wang v. H.B. Rest. Grp., Inc*., No. 14cv813 CM, 2014 WL 5055813, at *4 (S.D.N.Y. Oct. 7, 2014) (certification was proper based on the plaintiff's observations and conversations with his coworkers who worked in excess of 40 hours); *Gjurovich*, 282 F. Supp. 2d at 104 (collective certification appropriate where plaintiff made "substantial allegations in his complaint and his sworn declaration" that he received the same salary regardless of the number of hours he worked and established a sufficient factual nexus between his situation and the situation of other employees).

Defendants argue that Plaintiffs' statements in their Affidavits are "non-descriptive" and "complete hearsay."  (Def. Mem., at 7.)  Based on the legal standards applicable to this type of motion, however, these arguments are without merit.  *See Diatta v. Iguana New York Ltd.,* No. 15cv6399 (AT), 2016 WL 2865132, at *3 (S.D.N.Y. May 10, 2016) (certification was proper when plaintiffs attested that they had spoken to other employees in the kitchen of the restaurant who confirmed that their salary was fixed regardless of how many hours they worked);

*Fasanelli*, 516 F. Supp. 2d at 321-22 (finding that a plaintiff may make the required showing on the basis of unproven allegations, including hearsay).

Defendants further point out that there are inconsistencies among the Affidavits of the three Plaintiffs with regard to, *inter alia*, the nature and length of the rest breaks they claim they were afforded, and the wages they were paid.  (Def. Mem., at 7-8 (noting, *inter alia*, that plaintiff Wang indicates in his Affidavit that he had to pay $5.00 to take meal breaks, while Dai and Dong make no such claims).)  All of the inconsistences noted by Defendants, though, are fairly minor. Certainly, "[c]ourts in this District regularly certify national FLSA collective actions involving employees who are . . . subject to different minimum wages," *Kucker v. Petco Animal Supplies Stores, Inc.*, No. 14cv9983 (DF), 2016 WL 237425, at *12 (S.D.N.Y. Jan. 19, 2016) (citing *Flood v. Carlson Restaurants Inc.*, No. 14cv2740 (AT), 2015 WL 260436 (S.D.N.Y. Jan. 20, 2015)), and thus the fact that Plaintiffs may have been paid differently, or may have been entitled to different pay, is not dispositive.  Further, the types of factual inconsistencies highlighted by Defendants need not be resolved at this time.  *See Amador*, 2013 WL 494020, at *8 (quoting *Hernandez v. Merrill Lynch & Co*., No. 11cv8472 (KBF), 2012 WL 1193836, at *5 (S.D.N.Y. Apr. 6, 2012) (finding that inconsistencies in testimony and declarations did not defeat conditional certification because it would require the court to resolve factual disputes which the court does not do at this stage)).

Finally, in contrast to their argument that discrepancies among the Affidavits should weigh against conditional certification, Defendants also argue that the Affidavits of Dai and Dong should not be considered reliable because they contain the "same exact narrative," and some of their language is "boilerplate."  (Def. Mem., at 9.)  Such arguments have also been rejected by this Court.  *See Vecchio v. Quest Diagnostics Inc*., No. 16cv05165 (ER), 2018 WL

2021615, at *5 (S.D.N.Y. Apr. 30, 2018) (rejecting defendants' assertion that plaintiffs'
declarations should not be considered because they were virtually identical, and finding that the
similarities between the declarations suggested that plaintiffs were similarly situated).

In short, none of the issues raised by Defendants should prevent this action from
proceeding as an FLSA collective action with respect to dishwashers, and this category of
workers should be included in the collective.

## C.   **"Delivery" Workers**

Defendants contend that the Affidavit of plaintiff Wang (who, as noted above, states that
he worked at the Lychee House restaurant as a "deliveryman" from October 2012 to October
2013) should carry no weight because any wage-and-hour claims that Wang may have – while
within the six-year statute of limitations for NYLL claims – would fall outside the statute of
limitations for FLSA claims (which is two years, or three years for willful violations).  (*See* Def.
Mem., at 13; *see also supra*, at Section I(A).)  Although it is true that Wang, himself, could not
be part of the FLSA collective for which Plaintiffs are seeking certification, Wang's sworn
statements are nonetheless instructive regarding the history of Defendants' compensation
practices at the restaurant.  *See Rosario v. Valentine Ave. Disc. Store, Co.*, 828 F. Supp. 2d 508,
516 (E.D.N.Y. 2011) (finding that "[a]ffidavits of workers whose employment falls outside the
statutory period are probative of employer's wage and hour practices and they may corroborate
the claims of more recent violations" (quoting *Lujan v. Cabana Mgmt., Inc.*, No. 10-CV-755
(ILG) (RLM), 2011 WL 317984, at *5 (E.D.N.Y. Feb. 1, 2011) (internal quotation marks
omitted)).

In his Affidavit, Wang describes his conversations with other delivery workers.  Certain
of those workers seem, like Wang, to have worked at the restaurant outside of the statutory

period.  (Wang Aff. ¶¶ 19-21.)  This includes Guoliang Xu, who is stated to have worked at the

restaurant for more than two years, and who reportedly complained to Wang about having had to

work more than 50 hours per week without receiving overtime compensation (*id.* at ¶ 19), and

Xiaoming Yu, who is stated to have worked at the restaurant for three years, and who reportedly

"talked about [with Wang] the low wage during the break when [they] were doing side jobs"

(*id*. ¶ 21).  "To the extent these conversations occurred outside the statute of limitations under the

FLSA, they are nonetheless probative of [the] employer's wage and hour practices and they may

corroborate the claims of more recent violations."  *Bittencourt v. Ferrara Bakery & Cafe Inc*.,

310 F.R.D. 106, 115 (S.D.N.Y. 2015) (internal quotations and citations omitted).  Moreover, one

of the other delivery workers referenced by Wang – a worker identified as "Jin" – reportedly still

works at the restaurant.  (Wang Aff. ¶ 20.)  According to Wang, Jin complained to him that the

"payment at Lychee House [was] below minimum wage considering the long hours that [he]

actually worked."  (*Id*.)

 Wang's Affidavit is thus corroborative of Defendants' wage and hour practices with

respect to delivery workers, and the Court finds the information stated in that Affidavit to be

sufficient to allow for the inclusion of this category of workers in the conditionally certified

collective.

 **D.** **"Oil Woks"**

 Plaintiffs have also made a sufficient showing to permit inclusion in the collective of the

category of employees identified by Plaintiffs as "oil woks."  (*See* Dai Aff. ¶ 25; Dong Aff.

¶ 29.)  This Court understands that oil woks were kitchen workers at the Lychee House

restaurant, and plaintiffs Dai and Dong (kitchen workers themselves) have both stated, in their

Affidavits, that they had personal occasion to observe the hours of the other kitchen workers who

worked with them.  (*See* Dai Aff. ¶ 23; Dong Aff. ¶ 27.)  In this regard, Dai has attested to the

fact that "[a]ll kitchen workers had the same or similar working schedules" (Dai Aff. ¶ 23), and

Dong has attested that "[a]ll kitchen workers had [a] similar working schedule" (Dong Aff. ¶ 27).

In addition, Dai and Dong have each provided at least some information regarding the wages

paid by Defendants to oil woks who worked at the restaurant.  Dai states that he spoke with an

oil wok named Linghu Wei, and that Linghu Wei had complained to him that "he was the oil

wok but received similar wage[s] as [Dai,] which made him unhappy" (Dai Aff. ¶ 25), and Dong

states that he spoke with an oil wok nicknamed Si Ling and "once heard" Si Ling "say[] that his

wage was similar to [Dong's]" (Dong Aff. ¶ 29).

     While these statements by Dai and Dong are not specific as to either the precise number

of hours worked by oil woks or the amount of their pay, the statements do suggest that these

workers were similarly situated to Dai and Dong as to both, and statements like these, based on

personal observation, have been held sufficient to satisfy a plaintiff's burden at this preliminary

stage.  *See Yap v. Mooncake Foods, Inc.*, 146 F. Supp. 3d 552, 563 (S.D.N.Y. 2015) (permitting

certification of collective that included chefs, where one of the plaintiffs stated, based on

personal knowledge, that chefs "worked the same number of hours and were paid similarly to

[him]" (internal quotation marks and record citation omitted)).  Thus, although Plaintiffs'

presented evidence is relatively thin with respect to oil woks, this Court finds that, based on the

submitted Affidavits, Plaintiffs have provided the "minimum level of detail" required to show

that oil woks were subject to a common unlawful policy under the FLSA.  *Reyes v. Nidaja*, *LLC*,

No. 14cv9812 (RWS), 2015 WL 4622587, at *3 (S.D.N.Y. Aug. 3, 2015); *see also Hoffman*,

982 F. Supp. at 261.

E.     **Other Categories of Non-Exempt Workers**

As noted above, Plaintiffs go so far as to assert that all non-exempt employees of Defendants were subject to a common policy that denied them overtime pay, stating, in their moving brief, that "[t]he widespread FLSA wage-and-hour and other violations of Lychee House affect a large number of non-exempt employees."  (Pl. Mem., at 13.)  Plaintiffs, however, offer no substantive information in their Complaint or Affidavits about any categories of workers other than those discussed above.  At most, plaintiffs Dai and Dong have referred to observing "other kitchen workers" in their Affidavits (Dai Aff. ¶ 23: Dong Aff. ¶ 27), and Dong and Wang both refer vaguely to "the general wage situation" at the Lychee House restaurant (Dong Aff. ¶ 27; Wang Aff. ¶ 17).  These statements are too conclusory to permit even conditional certification of a collective that includes additional categories of workers.  *See Sanchez v. JMP Ventures, L.L.C.,* No. 13cv7264 (KBF), 2014 WL 465542, at *2 (S.D.N.Y. Jan. 27, 2014) (plaintiff's "generalized allegations" regarding defendants' "common practices" were insufficient to permit certification).

Of course, courts may conditionally certify collectives of individuals with a variety of job titles, but only where a common unlawful policy is shown.  *See Cano v. Four M Food Corp.*, No. 08cv3005 (JFB) (AKT), 2009 WL 5710143, at *9 (E.D.N.Y. Feb. 3, 2009) ("Even though plaintiffs are certainly not required to show that they are identically situated, or that they possess the same attributes with respect to their job, they are required to show that they are subject to the same common policy or plan by defendants").  To justify including different categories of workers in an FLSA collective, a "modest but *job-specific* factual showing" is required.  *Yap*, 146 F. Supp. 3d at 565 (citing *She Jian Guo*, 2014 WL 5314822, at *3); *accord Shanfa Li v. Chinatown Take-Out Inc.,* No. 16civ7787 (JCM), 2018 WL 1027161, at *5 (S.D.N.Y. Feb. 21,

2018) (quoting *Yap*).  In *Yap*, while conditionally certifying a collective of deliverymen and chefs, the court rejected plaintiffs' contention that their allegations regarding those two categories of workers would "allow the Court to draw an 'inference' that [d]efendants 'failed to pay other employees such as wait staff, bussers, etc., their entitled overtime.'"  *Id.* (record citation omitted).  Similarly, in *Colon v. Major Perry St. Corp.*, No. 12cv3788 (JPO), 2013 WL 3328223 (S.D.N.Y. July 2, 2013), the court conditionally certified a collective that included superintendents, but not handymen, where plaintiff's "affidavit offer[ed] only a brief sketch" regarding handymen and there was "no basis for concluding that these two groups were subject to the same policy," *id.* at *7.  Here, Plaintiffs have not even offered a brief sketch of the hours and compensation of groups of workers other than food preparers and cutters, dishwashers, delivery workers, and oil woks.

As a job-specific showing is needed, and as Plaintiffs have provided no information to show that employees in categories other than those discussed above were subject to a common unlawful compensation policy, this Court has no basis to certify, even conditionally, a collective that is broader than the categories of the identified workers.  Accordingly, to the extent Plaintiffs seeks to define the FLSA collective as including "all non-exempt employees" of Defendants, or, indeed, any job titles other than those discussed above, Plaintiff's motion for conditional certification is denied.

## III.   SCOPE AND FORM OF COURT-AUTHORIZED NOTICE

In light of the above rulings, the Proposed Notice of Pendency submitted by Plaintiffs (Troy Decl., Ex. 2) must be modified to some extent, consistent with this Court's Order, and as discussed below.

A.    **Appropriate Notice Period**

Given Plaintiffs' allegations of willful violation of the FLSA minimum wage and overtime provisions, the Court agrees with Plaintiffs that the relevant period for this collective should run from August 16, 2014 (*i.e.*, three years prior to the filing of this action) to the date of final judgment in the action.  While Defendants deny any willful violations (*see* Answer ¶¶ 34-35, 103-104), this is of no moment for purposes of defining the scope of the collective, *see Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 668 (S.D.N.Y. 2013) ("Where willfulness is disputed, the court applies the three-year statute of limitations for purposes of certifying a representative action.").

B.    **Appropriate Opt-In Period**

Plaintiffs propose that this Court approve a 60-day opt-in period for potential plaintiffs who may wish to join the collective.  (Pl. Mem., at 13.)  Although Defendants argue that "the 60 day time period should be reduced to 30 days" (Def. Mem., at 16), setting a 60-day opt-in period would be consistent with the practice in this District, *see, e.g., Racey v. Jay-Jay Cabaret, Inc.*, No. 15cv8228 (KPF), 2016 WL 3020933, at *7 (S.D.N.Y. May 23, 2016) (finding that a 30-day opt-in period was too short "to effect notice on the potential opt-in plaintiffs" (internal formatting omitted)); *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 451-452 (S.D.N.Y. 2011) (collecting cases).

C.    **Equitable Tolling**

Plaintiffs also request that the statute of limitations for potential plaintiffs' claims "be tolled for 90 days until the expiration of the opt-in period."  (Pl. Mem., at 7.)  In support of this request, Plaintiffs express concern because "the statute of limitation period continues to run with respect to each potential plaintiff's collective action claim until that plaintiff files the written

consent form opting into the suit." (*Id.*)  Equitable tolling, however, is applicable only in "rare and exceptional circumstances." *Phillips v. Generations Family Health Ctr.*, 723 F.3d 144, 150 (2d Cir. 2013) (quoting *A.Q.C. ex rel. Castillo v. United States*, 656 F.3d 135, 144 (2d Cir. 2011)).

A "district court may toll the limitations period to avoid inequitable circumstances, giving due consideration to whether the plaintiffs have acted with reasonable diligence in pursuing their claims and whether the circumstances are extraordinary enough to warrant equitable relief." *Viriri v. White Plains Hosp. Med. Ctr.*, 320 F.R.D. 344, 355 (S.D.N.Y. 2017) (quoting *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 170 (S.D.N.Y. 2014)).  In particular, some courts have tolled the statute of limitations for the claims of potential opt-in plaintiffs for the period of time that a motion for conditional certification has been *sub judice*, *see id.*, although it has also been held that delay by the court in deciding the motion will not justify equitable tolling, absent a showing that the litigants seeking to benefit from the tolling have acted diligently to protect their rights, *see Knox v. John Varvatos Enterprises Inc.*, 282 F. Supp. 3d 644, 658 (S.D.N.Y. 2017).

In any event, several courts have "declined to apply equitable tolling where the delay, in their view, was not of such a magnitude as to warrant tolling." *Viriri,* 320 F.R.D. at 355; *see also Mark v. Gawker Media LLC*, No. 13cv4347 (AJN), 2014 WL 5557489, at *2 (S.D.N.Y. Nov. 3, 2014) (declining equitable tolling where 11 months had passed since the filing of the motion for conditional certification, and finding that "the time delay between the date [p]laintiffs filed the motion and its resolution . . . was not extraordinary" (internal quotation marks omitted)).  Courts have also found that a determination as to equitable tolling would be premature, prior to a showing that the claims of any potential opt-in would be barred as the result

of a notice delay.  *See Whitehorn*, 767 F. Supp. 2d at 450 (finding that plaintiff's request to toll

the statute of limitations was premature, as it was yet unclear whether or not any potential

plaintiffs would be barred from the action due to a delay in notice).

In this case, Plaintiffs' motion for conditional certification was filed on February 21,

2018 and it was fully briefed on March 20, 2018.  There has been no substantial gap between the

time the motion was filed and the date of this decision, and, in fact, the time taken by this Court

to decide the motion has been less than the 11 months in *Mark,* where the court declined to find

equitable tolling.  *See Mark*, 2014 WL 5557489, at *2-3.  Moreover, Plaintiffs have not

demonstrated that the claims of any potential opt-in plaintiffs would actually be barred as the

result of any delay occasioned by the Court or by the terms of the notice.  *See Whitehorn*, 767

F. Supp. 2d at 450.  For these reasons, Plaintiffs' request that this Court make a determination of

equitable tolling is denied, without prejudice to the rights of potential opt-in plaintiffs to make a

further application for tolling upon an appropriate showing of exceptional circumstances and the

requisite diligence.

### D.    <u>Language of the Notice</u>

Plaintiffs request that all notices or posts to employees' attention be both in English and

Chinese, as many employees of the Lychee House restaurant are not well versed in the English

language.  (Pl. Mem., at 13.)  This type of request has been granted in other cases, *see, e.g.*,

*Iriarte v. Cafe 71, Inc*., No. 15cv3217 (CM), 2015 WL 8900875, at *6 (S.D.N.Y. Dec. 11, 2015)

(citing *Cuzco v. Orion Builders, Inc.*, 477 F. Supp. 2d 628, 635 (S.D.N.Y. 2007)); *see also*

*Castillo v. Perfume Worldwide Inc.*, No. CV 17-2972 (JS) (AKT), 2018 WL 1581975, at *15

(E.D.N.Y. Mar. 30, 2018) (finding that, in light of broad remedial purpose of FLSA, translating a

notice into Spanish was appropriate), and this Court finds it reasonable and appropriate in this

case, to increase the effectiveness of the notice in reaching potential opt-in plaintiffs.

Accordingly, Plaintiffs are granted leave to send out notice of the collective action in both

English and Chinese.[5]

### E.   Defendants' Production of Contact Information for Potential Opt-In Plaintiffs

In order to facilitate the provision of notice, Plaintiffs request that Defendants produce a

Microsoft Excel data file containing contact information ("including but not limited to last

known mailing addresses, law known telephone numbers, last known email addresses, and dates

of employment") for all non-managerial employees who worked for Defendants from August 16,

2014, to the date of this Order.  (Pl. Mem., at 14.)  Courts in this District "commonly grant"

requests for the production of such information, in connection with the conditional certification

of an FLSA collective action.  *Martin v. Sprint/United Mgmt. Co.*, No. 15cv5237 (PAE), 2016

WL 30334, at *19 (S.D.N.Y. Jan. 4, 2016); *see also In re Penthouse Exec. Club Comp. Litig.*,

No. 10cv1145 (NRB), 2010 WL 4340255, at *5 (S.D.N.Y. Oct. 27, 2010) (noting that "courts

often order the production of such information at the notice stage").

Accordingly, Plaintiffs' request that Defendants be required to provide the requested

information is granted, but, consistent with this Court's decision as to the appropriate scope of

the collective, such production need only be made regarding potential opt-in plaintiffs who

worked at the Lychee House restaurant as food preparers or cutters, dishwashers, delivery

workers, or oil woks.  *See Ji Li v. Ichiro Restaurant Inc.,* No. 14cv10242 (AJN) (JCF), 2015 WL

---

[5] Although Plaintiffs do not specify the Chinese dialect in which the notice should be prepared, this Court assumes, based on the statements by Dai and Dong that their Affidavits were translated for them into Mandarin Chinese (*see* Dai Aff. ¶ 26; Dong Aff. ¶ 30), that they are seeking to have the notice prepared in Mandarin.  If Plaintiffs believe that additional dialects are necessary to provide meaningful notice to all members of the collective, then they may also send out the notice with additional translations.

6828056, at *5 (S.D.N.Y. Nov. 5, 2015) (where the court found that plaintiffs had only

established that a group of delivery workers was similarly situated, defendants would only be

ordered to produce the requested information for the delivery workers).  The information may be

provided by Defendants in Microsoft Excel, or in any other reasonably useable form.

## **CONCLUSION**

For all of the foregoing reasons, Plaintiffs' motion for conditional certification of the

collective and Court-authorized notice (Dkt. 35) is granted in part and denied in part.

Plaintiffs are directed to modify their Proposed Notice of Pendency in accordance with

the rulings herein, and to resubmit it to this Court for approval within two weeks of the date of

this Order.

Within 30 days of the date of this Order, Defendants shall provide to Plaintiffs' counsel

the names, last-known addresses, all known telephone numbers, all known email addresses, all

known languages spoken, and dates of employment, of all food preparers and cutters,

dishwashers, delivery workers, and oil woks who worked at the Lychee House restaurant at any

time from August 16, 2014 to the present.

Once this Court approves the modified notice, Plaintiffs' counsel may arrange to have it

disseminated, in any relevant language, via mail, email, and/or text message, to all potential

members of the collective.  At the same time that the notice is disseminated by Plaintiffs'

counsel, Defendants shall post a copy of the notice, in all relevant languages, at the Lychee

House restaurant, in a conspicuous and unobstructed location or locations likely to be seen by all

currently employed members of the collective, and the notice shall remain so posted throughout

the opt-in period.

Dated: New York, New York
       August 29, 2018

                              SO ORDERED


                              _____

                              DEBRA FREEMAN
                              United States Magistrate Judge

Copies to:

All Counsel (via ECF)

28